## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARREN DARNELL COLEMAN, | |
| Plaintiff, | CIVIL ACTION NO. 1:15-CV-00847 |
| v. | (CONNER, C.J.) |
| | (MEHALCHICK, M.J.) |
| JOHN E. WETZEL, et al., | |
| Defendants. | |

## <u>REPORT AND RECOMMENDATION</u>

On April 30, 2015, Plaintiff Darren Darnell Coleman, appearing through counsel, initiated this civil rights action by filing a fee-paid complaint. (Doc. 1). The complaint alleges federal civil rights claims pursuant to 42 U.S.C. § 1983 against the following Pennsylvania Department of Corrections ("DOC") employees and officials: DOC Secretary John Wetzel; Jon D. Fisher, the former Superintendent of the State Correctional Institute at Smithfield, PA ("SCI-Smithfield"); the John Doe Prison Rape Compliance Act ("PREA") Compliance Manager at SCI-Smithfield; and various other SCI-Smithfield John and Jane Doe correctional officers ("COs") and supervisors. (Doc. 1, at 2-4). All events alleged in the complaint occurred in March 2014 while Plaintiff was incarcerated at SCI-Smithfield. Plaintiff filed the instant complaint after his release from SCI-Smithfield.

On August 3, 2015, Defendants Wetzel and Fisher filed a joint motion to dismiss the claims against them (Doc. 16), along with a brief in support thereof (Doc. 17). Plaintiff filed his brief in opposition on August 20, 2015 (Doc. 18), and Defendants Wetzel and Fisher filed a reply brief on September 3, 2015 (Doc. 19). Accordingly, the motion to dismiss is now ripe for decision.

## I.  BACKGROUND

This action stems from a physical and sexual assault Plaintiff suffered at the hands of his cellmate while both were incarcerated at SCI-Smithfield.

The complaint alleges that Plaintiff arrived at SCI-Smithfield on the afternoon of March 6, 2015 after violating the terms of his probation on a Driving Under the Influence conviction, and was assigned by Defendant CO Jane Doe to share a cell with inmate Gary Ausley. (Doc. 1, at 4). Ausley was serving a sentence of fifteen to thirty years after pleading guilty to murdering a prostitute that he "had sex with . . . and then shot . . . in the back of the head rather than pay her for sex." (Doc. 1, at 5). Plaintiff also alleges that Ausley had committed unspecified violent acts against other prisoners and was affiliated with the "Bloods" gang. (Doc. 1, at 5). Furthermore, Plaintiff alleges that he was approximately five inches shorter, fifty pounds lighter, and sixteen years older than Ausley. (Doc. 1, at 5). Due to these combined factors, Plaintiff alleges that CO Doe knew or should have known that Ausley posed a substantial risk to plaintiff (Doc. 1, at 4).

Upon Plaintiff being placed in the cell, Ausley immediately became angry and demanded that Plaintiff find a way to be reassigned to a different cell. (Doc. 1, at 5). Fearing that he would be assaulted, Plaintiff repeatedly pressed the cell intercom button to contact Defendant CO John Doe stationed at a desk in the center of the unit. (Doc. 1, at 5-6). Plaintiff stated over the intercom that he feared for his life and wanted to be removed from Ausley's cell, even if that required him being placed in solitary confinement. (Doc. 1, at 6). CO Doe responded to Plaintiff's pleas by telling him to "hang tight" and assuring him that "we will get you out of there," but also telling Plaintiff that he needed to wait for the sergeant to arrive and should stop pressing the intercom button until then. (Doc. 1, at 6).

These pleas over the intercom continued for over an hour. (Doc. 1, at 6). Finally, about ninety minutes after Plaintiff was initially placed in the cell, Defendant Sergeant John Doe arrived at the door of Plaintiff's cell and spoke to him for less than a minute while in the presence of Ausley. (Doc. 1, at 6). Sergeant Doe told Plaintiff that he could request his counselor for a transfer the next morning, and then walked away, leaving Plaintiff to spend the night in Ausley's cell. (Doc. 1, at 6-7).

Once it became evident that Plaintiff would not be reassigned that night, Ausley hung a towel from the bunk bed to obstruct the view of passing COs and directed Plaintiff to sit on a stool at the far side of the cell. (Doc. 1, at 7). Ausley then instructed Plaintiff to take off his pants and perform oral sex on him. (Doc. 1, at 7). Plaintiff complied out of fear for his safety. (Doc. 1, at 7). After several minutes, Ausley ordered Plaintiff to turn and lean over the stool, while shoving Plaintiff's head down and against the wall in a manner that caused injury to Plaintiff's back. (Doc. 1, at 7). Ausley then had Plaintiff lower his pants, causing Plaintiff to fear he was about to be anally raped. (Doc. 1, at 7-8). However, Ausley instead masturbated while standing over Plaintiff and ejaculated onto Plaintiff's back. (Doc. 1, at 8). The assault then concluded, and Ausley returned to his bunk to fall asleep while Plaintiff remained in a state of terror and was unable to sleep at all that night. (Doc. 1, at 8).

The following morning, Plaintiff reported the incident to prison staff and was taken to Geisinger Lewiston Hospital for treatment, where a rape kit was administered and Plaintiff gave a statement to police. (Doc. 1, at 8). Upon his return to SCI-Smithfield, Plaintiff spent twenty-five days in the medical unit, participated in all psychiatric and psychological treatments available to him, and saw a psychologist whenever allowed to do so while at the prison. (Doc. 1, at 8). As a result of the assault, Plaintiff suffers from back

pain, depression, anxiety, post-traumatic stress disorder, nightmares, and has had suicidal thoughts. (Doc. 1, at 12). He has continued to seek treatment at Crozer Keystone Community Hospital after his release from prison. (Doc. 1, at 12).

The complaint advances three causes of action, each stemming from alleged violations of Plaintiff's rights under the Eighth Amendment, as made applicable to state actors through the Fourteenth Amendment. In Count One, the complaint asserts a failure-to-protect claim against the Jane Doe CO who made Plaintiff's initial cell assignment, the John Doe CO on desk duty who responded to Plaintiff's pleas over the intercom, and the John Doe Sergeant who visited Plaintiff at his cell. (Doc. 1, at 12). Count Two of the complaint asserts that Defendants Secretary Wetzel, Superintendent Fisher, the John Doe PREA compliance manager, and unspecified supervising John or Jane Doe prison employees are each liable in their capacities as policymakers for their failure to protect Plaintiff. (Doc. 1, at 14). Lastly, Plaintiff asserts in Count Three that each of the Defendants named in regard to Count Two are also liable for their failure to properly train and supervise prison correctional staff. (Doc. 1, at 15-16). The pending motion to dismiss only addresses Counts Two and Three of the complaint, as Defendants Wetzel and Fisher were not named with regard to Count One.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v.*

> *Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

> *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

III.   **DISCUSSION**

Plaintiff's complaint asserts federal civil rights claims brought pursuant to 42 U.S.C.

§ 1983. Section 1983 provides a private cause of action with respect to violations of federal

constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for

rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To

establish a § 1983 claim, a plaintiff must establish that a defendant, acting under color of

state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v.

Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The Eighth Amendment protections

that Plaintiff invokes are incorporated against state actors through the substantive due

process clause of the Fourteenth Amendment. *Louisiana ex rel. Francis v. Resweber*, 329 U.S.

459, 463 (1947).

The Eighth Amendment protects prisoners from being subjected to cruel and unusual

punishment. U.S. Const. amend. VIII. There are different types of Eighth Amendment

claims, and different standards apply depending on the type of violation alleged. *See Hudson

v. McMillian*, 503 U.S. 1, 8 (1992). Here, Plaintiff alleges that the Defendant prison officials

failed in their "duty . . . to protect prisoners from violence at the hands of other prisoners."

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prevail on any Eighth Amendment claim,

an inmate must show: (1) a deprivation that is objectively sufficiently serious; and (2) "a

sufficiently culpable state of mind" of the defendant official. *See Farmer*, 511 U.S. at 834. In failure to protect claims, a sufficiently serious deprivation occurs when an inmate "is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Furthermore, a prison official acts with a sufficiently culpable state of mind where the official displays deliberate indifference to the inmate's safety by recklessly disregarding a known and substantial risk of harm to the inmate. *Farmer*, 511 U.S. at 836.[1]

It is well settled that "civil rights claims cannot be premised on a theory of *respondeat superior*," as individual government defendants must have personal involvement in the alleged wrongdoing. *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014). However, a prison official may be personally liable under § 1983 through two theories of supervisory liability: (1) if the official "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm;" or (2) "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Here, Plaintiff brings one claim under each theory against the supervisory Defendants. (Doc. 1, at 14-16). In Count Two, Plaintiff alleges that Wetzel, Fisher, and the other supervisory Defendants established and maintained a policy that created a substantial risk of serious harm by forcing non-violent inmates to be celled with violent inmates. (Doc. 1, at 14-15). In Count Three, Plaintiff alleges that Wetzel, Fisher, and the other supervisory Defendants acquiesced to their subordinates' violations by

---

[1] A prison official thus does not violate the Eighth Amendment by failing "to alleviate a significant risk that he should have perceived but did not . . . ." *Farmer*, 511 U.S. at 838.

failing to properly train and supervise them in responding to complaints from inmates fearful of assault. (Doc. 1, at 15-17). In support of their motion to dismiss, Defendants argue that Wetzel and Fisher are entitled to qualified immunity because they did not violate a clearly established constitutional right with regard to the cell-assignment policies at SCI-Smithfield, and additionally that Wetzel and Fisher should be dismissed from the complaint because Plaintiff failed to plead specific factual allegations to sustain his claim that they were deliberately indifferent to a known substantial risk that Plaintiff would be assaulted. (Doc. 17, at 4-14).

### A. QUALIFIED IMMUNITY

Wetzel and Fisher assert that they are entitled to qualified immunity with respect to Count Two of the complaint. (Doc. 17, at 4-9). Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). However, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop

the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). The key determination thus is whether "immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

The Supreme Court has noted that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 131 S. Ct. at 2080. The Court will proceed directly to the second prong of the qualified immunity analysis because Defendants solely contend that their cellmate assignment policies did not violate a clearly-established right. (Doc. 19, at 4). "A right is 'clearly established' if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 585 (M.D. Pa. 2013). A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. Furthermore, the Third Circuit has noted that "[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 n.4 (3d Cir. 2001). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see also al–Kidd*, 131 S.Ct. at 2084 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). "The dispositive question is 'whether the violative nature

of particular conduct is clearly established.' " *Mullenix v. Luna*, ⸺ U.S. ⸺, 136 S.Ct. 305, 308, ⸺ L.Ed.2d ⸺ (2015) (per curiam) (*quoting al–Kidd*, 131 S.Ct. at 2084).

At issue in this case is whether non-violent inmates have a clearly-established right under the Eighth Amendment not to be celled with dangerous and violent inmates. (Doc. 17, at 8; Doc. 18, at 7). Defendants argue that no such right has been clearly established.[2]

The Third Circuit has held that an inmate who at all relevant times was either not yet convicted, or convicted but not yet sentenced, had a clearly established constitutional right to have prison officials protect him from inmate violence, and further, that placing him in a locked recreation pen with any violent inmates, not only those he specifically cooperated against, created a substantial risk of serious harm. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012). In so holding, the Court noted that the plaintiff was an inmate awaiting sentencing; as such, his claims were not brought pursuant to the Eight Amendment, but recognized that an unsentenced inmate may bring a due process-grounded failure-to-protect claim of the sort that a sentenced inmate can bring under the Eighth Amendment. The Court held that "it is well established that an unsentenced inmate 'is entitled[,], at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment' and therefore, Bistrian had a **clearly established constitutional right** to have prison officials protect him from inmate violence. *Bistrian v. Levi*, 696 F.3d 352, 366-67 (3d Cir. 2012) (emphasis added); *citing Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir.2000).

---

[2] In support of their position, Defendants point to the case of *Reed v. Harpster*, No. 3:CV-09-1618, 2012 WL 2871797 (M.D. Pa. July 12, 2012) *aff'd*, 506 F. App'x 109 (3d Cir. 2012). However, Defendants' reliance on *Reed* is misplaced because the cellmates in *Reed* were both violent offenders who had each been convicted of murder. *Reed*, 2012 WL 2871797, at *2. The *Reed* case therefore did not address whether a cell assignment policy that fails to segregate violent inmates from non-violent inmates could create a substantial risk of serious harm.

Additionally, several federal courts of appeals in other circuits have determined that cell assignment policies that do not attempt to segregate violent prisoners from non-violent prisoners, particularly when combined with other aggravating factors, may be part of an Eighth Amendment violation. *See Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 66 (1st Cir. 2002) (holding that the risk of inmate-upon-inmate violence has been held a sufficiently serious harm to implicate inmates' constitutional rights, and that lack of a classification system may be part of an Eight Amendment violation); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1029 (11th Cir. 2001) (finding that plaintiff's claims, including allegation that prison supervisor failed to separate non-violent inmates from violent inmates, presented an objectively substantial risk of serious harm); *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) ("[Plaintiff] only needed to prove that the policymaker knew there was a substantial risk of serious harm to the inmates under his policy or custom of housing all manner of inmates together. That policy created an unsafe jail and the substantial risk that inmates would be injured."); *Marsh v. Arn*, 937 F.2d 1056, 1062 (6th Cir. 1991), *overruled on other grounds by Farmer*, 511 U.S. 825 ("Failure to segregate violent inmates from non-violent inmates has been held to constitute 'deliberate indifference' and thus to violate the [E]ighth [A]mendment where there is a 'pervasive' risk of harm or where the victim belonged to an 'identifiable' group of prisoners for whom risk of assault is a serious problem of substantial dimension."); *accord Barreto v. Cnty. of Suffolk*, 762 F. Supp. 2d 482, 492 (E.D.N.Y. 2010) ("Plaintiff has alleged not just an overall policy of housing violent and non-violent offenders together, but that the County failed to segregate even those violent offenders who it *knew* had a track record of violently attacking fellow inmates while incarcerated, thereby suggesting that the County consciously disregarded serious risks to inmate safety."); *Freeman*

*v. Snyder*, No. CIV.A. 98-636-GMS, 2000 WL 1728278, at *9 (D. Del. Mar. 29, 2000) (denying defendants' motion for summary judgment upon finding it "troubling to learn that an inmate who was incarcerated for check forgery was placed in a cell with a prisoner who had been convicted of murder").

In the case at bar, Plaintiff has also alleged aggravating factors that helped to create a substantial risk of harm, namely the age and size discrepancies between Plaintiff and Ausley, as well as Ausley's gang affiliation. (Doc. 1, at 5). In light of this substantial line of authority, Plaintiff's alleged aggravating factors, and the Third Circuit's instruction that qualified immunity is generally not appropriate at the pleading stage, *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009), it is recommended that Defendants' qualified immunity defense be denied without prejudice to the argument being re-raised in a later motion for summary judgment.

### B. MERITS OF SUPERVISORY LIABILITY CLAIMS

#### 1. Count Two: Cell Assignment Policy

Plaintiff alleges that Wetzel, Fisher, and the other supervisory Defendants established and maintained a cell-assignment policy that created a substantial risk of serious harm because it neglected to separate violent inmates from non-violent inmates. (Doc. 1, at 14-15). Defendants assert that this claim should be dismissed because Plaintiff fails to state a plausible claim that Defendants were deliberately indifferent to the alleged substantial risk of serious harm posed by the prison cell-assignment policy. (Doc. 17, at 9). The Third Circuit has instructed:

> [T]o hold a supervisor liable because his policies or practices led to an Eighth
> Amendment violation, the plaintiff must identify a specific policy or practice
> that the supervisor failed to employ and show that: (1) the existing policy or
> practice created an unreasonable risk of the Eighth Amendment injury; (2) the

supervisor was aware that the unreasonable risk was created; (3) the
supervisor was indifferent to that risk; and (4) the injury resulted from the
policy or practice."

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v.
Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

These elements are met and a supervisory liability claim is established where "the
supervisory official failed to respond appropriately in the face of an awareness of a pattern
of such injuries" or where "the risk of constitutionally cognizable harm is so great and so
obvious that the risk and the failure of supervisory officials to respond will alone support" a
finding of deliberate indifference. *Sample*, 885 F.2d at 1118. Here, Plaintiff has not pled any
facts that make it plausible to conclude that Wetzel, Fisher, and the other supervisory
Defendants exhibited deliberate indifference through SCI-Smithfield's cell assignment
policies.[3]

Even assuming that the cell assignment policy created an unreasonable risk of injury
and that Plaintiff's assault at the hands of Ausley resulted from that policy, this Court

---

[3] Plaintiff also frequently references the PREA, 42 U.S.C. § 15601 *et seq*., throughout
the complaint, and states in his brief in opposition that "Defendants' implementation of a
flawed or non-existent policy to prevent sexual assault ignored a serious threat posed to
Plaintiff and therefore led to his sexual assault." (Doc. 18, at 11). However, Plaintiff does
not identify a rape prevention policy, or lack thereof, as a separate cause of action in his
complaint. To the extent that Plaintiff attempts to do so in his brief in opposition, it is
"axiomatic that the complaint may not be amended by the briefs in opposition to a motion
to dismiss." *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173 (3d
Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)).
Furthermore, even if Plaintiff had alleged a theory of supervisory liability on the basis of
Defendants' rape prevention policy, that claim would necessarily fail. Plaintiff states no
facts in the complaint that could lead the Court to conclude that SCI-Smithfield's rape
prevention policy created an unreasonable risk of harm to inmates, such as a pattern of past
sexual assaults. In addition, there is no basis for concluding that an inadequate rape
prevention policy caused Plaintiff's assault because Plaintiff does not allege that Ausley
committed sexual assault before or otherwise would somehow have been "flagged" by a
stronger rape prevention policy.

cannot infer from Plaintiff's allegations that Defendants were personally aware of the unreasonable risk that the cell assignment policy created. *See Beers–Capitol*, 256 F.3d at 134. Plaintiff's conclusory allegation that "Defendants . . . knew of this substantial risk of serious harm and were deliberately indifferent to that risk" is insufficient to support a finding of deliberate indifference. (Doc. 1, at 15); *see Iqbal*, 556 U.S. at 678. Although Plaintiff alleges that Ausley had "a history of violent incidents against other prisoners," Plaintiff fails to connect this allegation to the cell assignment policy. (Doc. 1, at 5). Plaintiff does not claim that any of the victims of Ausley's past assaults were non-violent cellmates. In fact, nowhere on the face of the complaint does Plaintiff allege that prior physical or sexual assaults at SCI-Smithfield were attributable to the policy of housing non-violent and violent inmates together in the same cell. Accordingly, Plaintiff fails to demonstrate a "pattern of injuries" that would serve to give notice that the cell assignment policy created an unreasonable risk of harm. *Sample*, 885 F.2d at 1118.

Nor does Plaintiff make any showing that the risk of harm from SCI-Smithfield's cell assignment policy was "so great and so obvious" as to support a finding that Defendants were deliberately indifferent to that risk. *Sample*, 885 F.2d at 1118. Even if the cell assignment policy did not comport with best practices or the spirit of the PREA, 42 U.S.C. § 15601 *et seq*., these shortcomings do not meet the high standard of actual knowledge that is required to show deliberate indifference. *See Beers–Capitol*, 256 F.3d at 137-38 (holding that defendant juvenile detention center officials' failure to implement standard policies and procedures evinced negligence but did not serve to show that the risk was "so great and so obvious" that defendants had actual knowledge of an unreasonable risk); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240, 247 (3d Cir. 2005) ("[T]he mere

presence of a consent decree applicable to all New Jersey prisons, not just EMCF, cannot satisfy *Sample's* alternative method for establishing an unreasonable risk of serious harm. The existence of the consent decree, which addresses guard assignments, privacy accommodations . . . , and training and policies respecting inmate privacy concerns, cannot be said to have made it "so great and so obvious" to the Administrative Defendants that there existed a risk of assaults of the type [plaintiffs] would suffer."). Because Plaintiff does not allege any facts upon which the Court could conclude that Defendants knew that the policy of assigning non-violent inmates to cell with violent inmates posed an unreasonable risk of harm, it is recommended that Defendants Wetzel and Fisher's motion to dismiss be granted with respect to Count Two of Plaintiff's complaint.

### 2.   Count Three: Failure to Train and Supervise

In Count Three, Plaintiff alleges that Wetzel, Fisher, and the other supervisory Defendants are liable for their subordinates' violations because they failed to properly train and supervise the subordinates in responding to complaints of threats posed to inmates and in implementing SCI-Smithfield policies. (Doc. 1, at 15-17). "To be liable in this situation, a supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). In order to establish a § 1983 claim for failure to train, "a plaintiff must (1) identify with particularity what the supervisory officials failed to do that demonstrates deliberate indifference and (2) demonstrate a close causal link between the alleged failure and the alleged injury." *Daniels v. Delaware*, 120 F. Supp. 2d 411, 423 (D. Del. 2000) (citing *Sample*, 885 F.2d at 1118). "[T]he inadequacy of . . . training may serve as the basis for § 1983

liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [inadequately trained subordinates] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Furthermore, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). In the absence of such a pattern, a plaintiff must show that the harm suffered was "*so* predictable that failing to train the [subordinates] amounted to *conscious disregard*" for plaintiff's rights. *Connick*, 563 U.S. at 71 (emphasis in original). However, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62; *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").

Here, Plaintiff fails to allege that the supervisory Defendants had notice that their training program insufficiently prepared prison staff "to respond to complaints of fear and violence in their care and custody." (Doc. 1, at 16). Plaintiff does not allege a pattern of similar constitutional violations where inmates were either physically or sexually assaulted after warning prison staff that they feared an attack and receiving an inadequate response. Instead, Plaintiff makes the conclusory assertion that Wetzel and Fisher "knew of other occasions when federal, DOC and Pennsylvania policies, rules, regulations and best practices regarding matters such as cell assignments and protecting inmates from physical and sexual assault were violated by correctional officers under his command, including

16

Defendants CO John Doe, CO Jane Doe and Sgt. John Doe." (Doc. 1, at 9). However, this assertion does not "identify with particularity" the specific flaws in Defendants' training program." *Sample,* 885 F.2d at 1118; *see Wood v. Williams*, 568 F. App'x 100, 107 (3d Cir. 2014) ("The complaint contained no specific factual allegations fleshing out the claims of supervisory liability."). Plaintiff's allegation of unspecified past violations by corrections officers also fails to show that Wetzel and Fisher had notice of a substantial risk to inmate safety to the point where Plaintiff's assault became an "obvious consequence" of the deficient training program. *Connick*, 563 U.S. at 61. Thus, even if Plaintiff's complaint raises an inference of negligence with regard to Defendants' training program in general, that inference falls far short of stating "it was *so* predictable that failing to train [corrections officers] amounted to *conscious disregard"* for Plaintiff's rights and was the proximate cause of Plaintiff's assault. *Connick*, 563 U.S. at 71 (emphasis in original); *Owens v. Coleman*, No. 15-2539, 2015 WL 6912432, at *3 (3d Cir. Nov. 10, 2015) ("Claims of negligence, without some more culpable state of mind, do not constitute 'deliberate indifference.'"). Accordingly, it is recommended that the failure to train and supervise claims against Defendants Wetzel and Fisher in Count Three of the complaint be dismissed for failure to state a claim.

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp*, 293 F.3d 103, 108 (3d Cir. 2002). In civil rights cases, District Courts are to follow this instruction "even [if] the plaintiff [is] represented by experienced counsel [and] never sought leave to amend."

*Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (citing *Dist. Council 47 v. Bradley*, 795 F.2d 310, 316 (3d Cir. 1986)). It is not apparent in this case that amendment would be futile with respect to Counts Two and Three of the complaint, nor is there any basis to believe it would be inequitable to Defendants Coleman and Wetzel. In fact, with more specific allegations as to how Wetzel, Fisher, and the other supervisory Defendants knew that their cell-assignment policy and training methods posed an unreasonable risk, Plaintiff will likely be able to "nudge[ ] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 560. It is therefore recommended that Plaintiff be granted leave to amend his complaint.

Leave to amend is also appropriate at this time because Plaintiff has not yet named or served the John Doe Defendants in his complaint. "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed," however, "an action cannot be maintained solely against Doe defendants." *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998). Once a defendant's real name has been identified, a plaintiff may replace the John Doe with the party's real name by filing an amended complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. *Ballard v. Williams*, No. 3:10-CV-1456, 2012 WL 3113934, at *1 (M.D. Pa. July 31, 2012) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003)). A plaintiff employing John Does as stand-in defendants must also be wary of Rule 4(m) of the Federal Rules of Civil Procedure, which states in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).[4]

In the case at bar, Plaintiff's complaint was filed on April 30, 2015, approximately 230 days ago. The presumptive time period for serving the John Doe Defendants named in Plaintiff's complaint thus has long passed. A review of the docket reveals that no proof of service or signed waiver of service has been filed by the Plaintiff with respect to any of the John Doe Defendants. Accordingly, in recommending leave to amend the Court also gives notice that Plaintiff must identify and serve any of the John Doe Defendants from the initial complaint that he wishes to reassert claims against in an amended complaint. To the extent that Plaintiff fails to do so, the John Doe Defendants in the amended complaint will be subject to dismissal pursuant to Rule 4(m). *See McLaud v. Indus. Res., Inc.*, No. 3:CV-14-737, 2015 WL 737569, at *3 (M.D. Pa. Feb. 20, 2015) ("[T]he filing of an amended complaint does not restart the 120–day service period as to defendants that are not newly added to the complaint.").

## V.   RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Defendants Wetzel and Fisher's motion to dismiss (Doc. 16) be **GRANTED** in part and **DENIED** in part;

2. Defendants Wetzel and Fisher's motion to dismiss on the grounds of qualified immunity be **DENIED without prejudice**;

3. Plaintiff's claims against Defendants Wetzel and Fisher be **DISMISSED without prejudice** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);

---

[4] Rule 4(m) was amended on December 1, 2015 to reduce the presumptive time for serving a defendant from 120 days to 90 days. Under either version of Rule 4(m), Plaintiff's presumptive time period for serving the John Doe Defendants named in this case has already passed.

4. Plaintiff be given **THIRTY (30) DAYS** leave to amend his complaint against all Defendants; and

5. The case be remanded to the undersigned for further proceedings.

BY THE COURT:

Dated: December 28, 2015

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DARREN DARNELL COLEMAN,

           Plaintiff,

    v.

JOHN E. WETZEL, et al.,

           Defendants.

CIVIL ACTION NO. 1:15-CV-00847

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 28, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: December 28, 2015

                          *s/ Karoline Mehalchick*
                          **KAROLINE MEHALCHICK**
                          **United States Magistrate Judge**