## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DARREN DARNELL COLEMAN,

          Plaintiff,

    v.

JOHN E. WETZEL, et al.,

          Defendants.

CIVIL ACTION NO. 1:15-CV-00847

(CONNER, C.J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

Before the Court is a motion to dismiss filed by Defendants Wetzel, Fisher, and Biser (collectively, the "Supervisory Defendants"). (Doc. 34; Doc. 35). The Supervisory Defendants assert they should be dismissed from the action because Plaintiff has failed to plead facts allowing a plausible inference that they were deliberately indifferent to a serious risk that Coleman would be sexually assaulted due to inadequate training of corrections offers ("COs") and that in any event, they are shielded by qualified immunity. (Doc. 35, at 4).

I.   **FACTUAL BACKGROUND AS ALLEGED IN PLAINTIFF'S AMENDED COMPLAINT**

On March 6, 2014, Plaintiff Darren Darnell Coleman entered the State Correctional Institute at Smithfield, PA ("Smithfield") following a violation of his probation for a DUI violation. (Doc. 28, ¶ 27). Smithfield staff assigned Coleman cell 44 on K block, which was also occupied by inmate Gary Ausley, who had pled guilty to the murder of a prostitute. (Doc. 28, ¶ 31-34).

Upon Coleman entering the cell, Ausley demanded that Coleman find a way to be immediately reassigned, putting Coleman in fear of harm if he failed to appease his cellmate. (Doc. 28, ¶ 42-43). Coleman repeatedly contacted the corrections officers over the intercom in order to be reassigned. (Doc. 28, at 43). C/O's told Coleman that he had to wait and "to stop

pushing the button." (Doc. 28, ¶ 47, 49). Eventually, Sgt. Shirley approached Coleman but declined to reassign him following their discussion. (Doc. 28, ¶ 50-51).

Giving up on being reassigned that night, Coleman attempted to enter his bunk only to be stopped by Ausley. (Doc. 28, ¶ 52-53). Ausley then proceeded to assault Coleman. (Doc. 28, ¶ 56, 59-63). Coleman received treatment at Geisinger Hospital the next morning and spent considerable time in the prison's medical unit in addition to receiving psychological assistance for the remainder of his incarceration. (Doc. 28, ¶ 66-69).

## II.  PROCEDURAL HISTORY

Coleman initiated the present 42 U.S.C. § 1983 civil rights action by filing his counseled complaint on April 30, 2015. (Doc. 1). Coleman's complaint brought claims against Pennsylvania Department of Corrections ("DOC") employees and officials at Smithfield.[1] (Doc. 1). The Court referred the matter to mediation (Doc. 14), which Coleman opposed due his need for discovery in order to identify John Doe Defendants. (Doc. 15). The Court vacated the referral on October 16, 2015. (Doc. 20).

On August 3, 2015, Wetzel and Fisher filed a motion to dismiss, stating they were protected by qualified immunity as their actions did not violate Coleman's clearly established constitutional rights, nor were there sufficient facts to find deliberate indifference to the risk he would be sexually assaulted. (Doc. 16). Coleman opposed. (Doc. 17). On December 28, 2015, the Court found dismissal on qualified immunity grounds premature at the pleading stage,

---

[1] These Defendants were: John E. Wetzel, Secretary of the DOC; Jon D. Fisher, former Superintendent of SCI-Smithfield; the John Doe Prison Rape Elimination Act Compliance Manager for SCI-Smithfield; and eight John/Jane Doe officers and staff at SCI-Smithfield.

denying dismissal on such a theory at that stage of the proceedings. (Doc. 21, at 8-12). Additionally, the Court recommended dismissal of Wetzel and Fisher from Count II of the complaint, finding that Coleman's claims seeking redress from the pair based on the cell assignment policies to be lacking personal involvement on their part. (Doc. 21, at 12-15). Lastly, the Court recommended dismissal of Wetzel and Fisher from Coleman's claim that their inadequate training and supervision of officers caused Coleman to be assaulted. (Doc. 21, at 15-17). Despite the objections of Coleman (Doc. 22), the District Court adopted the Report and Recommendation on February 29, 2016, granting Coleman 30 days to amend. (Doc. 25).

Coleman filed an amended complaint on April 29, 2016. (Doc. 28). The amended complaint identified many of the John and Jane Doe Defendants, including Mandy Biser, one of the Supervisory Defendants now seeking dismissal. (Doc. 28). Coleman's amended complaint renewed failure to train and supervise claims against Fisher and Wetzel, adding Biser. (Doc. 28, at 28).

On July 11, 2016, the Supervisory Defendants filed the instant motion to dismiss. (Doc. 34). In support, the Supervisory Defendants again argued that Coleman failed to plead facts permitting a plausible inference that they were deliberately indifferent to the serious risk that Coleman would be sexually assaulted due to the inadequate training of corrections officers. (Doc. 35, at 4). Additionally, they argued they should be dismissed because they are entitled to qualified immunity. (Doc. 35, at 4). Coleman filed his opposition on July 25, 2016. (Doc. 38). The Court stayed all action in the case pending resolution of the instant motion. (Doc. 40).

III. **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

3

The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Assoc'd. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In deciding a

4

Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

IV. **DISCUSSION**

In Count Three of the amended complaint, Coleman alleges that Wetzel, Fisher, and Biser were deliberately indifferent in their training and supervision of subordinates, in that they failed to implement and enforce proper prevention policies given their knowledge of sexual assaults in Smithfield and Department of Corrections mandates. (Doc. 28, ¶ 143-152). Coleman alleges the Supervisory Defendants failed to train and supervise Sgt. Shirley and the COs assigned to Coleman's cell block. (Doc. 28, ¶ 144). Specifically, Coleman alleges the trio "failed to implement and enforce [policies] that trained correctional staff how to receive complaints of actual and feared sexual assault from inmates housed with potential perpetrators." (Doc. 28, ¶ 145).

In support of their motion to dismiss, the Supervisory Defendants argue that Coleman does not satisfactorily identify what aspect of the training and supervision policies was defective. (Doc. 35, at 6). They state that it was not "so predicable that failing to train the corrections officers amounted to conscious disregard for plaintiff's rights." (Doc. 35, at 9) (quoting *Connick v. Thompson*, 563 U.S. 51, 71 (2011)). Additionally, the Supervisory Defendants assert that the alleged failure to train and supervise did not constitute causation for the harms Coleman suffered. (Doc. 35, at 11). Lastly, they move for a determination that they are shielded by qualified immunity. (Doc. 35, at 12). Coleman counters that he has sufficiently pled facts alleging that the Supervisory Defendants were deliberately indifferent to the serious risk that he would be sexually assaulted and still failed to train and supervise staff. (Doc. 38, at

5-6). Coleman further avers that none of the three Supervisory Defendants is entitled to qualified immunity. (Doc. 38, at 10).

   A. COLEMAN HAS ALLEGED FACTS PERMITTING A PLAUSIBLE CLAIM OF DELIBERATE INDIFFERENCE ON THE PART OF THE SUPERVISORY DEFENDANTS FOR THEIR FAILURE TO TRAIN OR SUPERVISE CORRECTIONS OFFICERS.

Coleman's complaint asserts federal civil rights claims brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The Eighth Amendment protections that Coleman invokes are incorporated against state actors through the substantive due process clause of the Fourteenth Amendment. *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947).

The Eighth Amendment protects prisoners from being subjected to cruel and unusual punishment. U.S. Const. amend. VIII. There are different types of Eighth Amendment claims, and different standards apply depending on the type of violation alleged. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In order to establish a § 1983 claim for failure to train, "a

plaintiff must (1) identify with particularity what the supervisory officials failed to do that demonstrates deliberate indifference and (2) demonstrate a close causal link between the alleged failure and the alleged injury." *Daniels v. Delaware*, 120 F. Supp. 2d 411, 423 (D. Del. 2000) (citing *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989)). "[T]he inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [inadequately trained subordinates] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "To be liable in this situation, a supervisor must have been involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Furthermore, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). In the absence of such a pattern, a plaintiff must show that the harm suffered was "*so* predictable that failing to train the [subordinates] amounted to *conscious disregard*" for plaintiff's rights. *Connick*, 563 U.S. at 71 (emphasis in original). However, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62; *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").

In short, Coleman has satisfactorily plead facts sufficient to survive a motion to dismiss of his failure to train claim under § 1983. Coleman alleges a failure to train subordinates on

receiving reports of feared assaults by inmates. (Doc. 28, ¶ 89; Doc. 38, at 6). Coleman alleges such a failure despite the existence of the Prison Rape Elimination Act Procedures Manual (DC-ADM 008), which mandates basic training for prison employees in the detection and response to sexual abuse and harassment and provides no evidence that training did not occur other than his conclusory statements.

With regard to liability premised upon a failure to supervise, it is well settled that "civil rights claims cannot be premised on a theory of *respondeat superior*," as individual government defendants must have personal involvement in the alleged wrongdoing. *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014). However, a prison official may be personally liable under § 1983 through two theories of supervisory liability: (1) if the official "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm;" or (2) "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

The Court finds that Coleman has adequately alleged that the Supervisory Defendants knew that their cell assignment policies and training methods posed an unreasonable risk. Coleman has alleged the existence of policies, and has alleged that the Supervisory Defendants failed to provide training in accordance with those policies. (Doc. 28, ¶¶ 145-150). Further, Coleman has alleged an ongoing pattern of inmate-on-inmate sexual abuse or harassment throughout Pennsylvania Department of Corrections facilities, including allegations of such acts at SCI-Smithfield. (Doc. 28, ¶¶ 72-79). Coleman has also sufficiently alleged that the Supervisory Defendants were aware that inmates with the characteristics of Ausley were likely

to be aggressors. (Doc. 28, ¶¶ 83-86). Coleman has also sufficiently alleged that the Supervising Defendants' failure to train was the direct and proximate cause of his injuries. (Doc. 28, ¶ 152).

In sum, Coleman's amended complaint identifies the particular failure in training. (Doc. 28, ¶¶ 92-110). Further, it alleges the existence of similar violations (Doc. 28, ¶¶ 72-79) and that the Supervisory Defendants knew or should have known of these violations. (Doc. 28, ¶ 146). Because the factual content pled in the Complaint allows the Court to draw a reasonable inference that the Supervisory Defendants were a "moving force" behind Plaintiff's injuries, the claims against them should survive a motion to dismiss.[2] *Santiago v. Warminster Tp.*, 629 F.3d 121, 135 (3d Cir.2010) (for facial plausibility sufficient to satisfy *Iqbal*, a claimant must specify what exactly the custom or policy was and how the policy was the source of the alleged injury).

Accordingly, the Court recommends the motion to dismiss by Defendants Wetzel, Fisher, and Biser (Doc. 28) be denied.

B. THE SUPERVISORY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AT THIS STAGE OF THE PROCEEDINGS.

The Supervisory Defendants assert that they are entitled to qualified immunity with respect to Count III of the amended complaint. (Doc. 35, at 12). Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory

---

[2] Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *White v. Brommer*, 747 F. Supp. 2d 447, 457 (E.D. Pa. 2010) (citations omitted).

or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). However, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). The key determination thus is whether "immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

The Supervisory Defendants argue they are entitled to qualified immunity because "it is not clearly established that prisons are constitutionally required to privately interview inmates when they make complaints about other inmates." (Doc. 35, at 12). The Court finds that the Defendants have overly narrowed the issue in this case, and that the relevant inquiry is whether non-violent inmates have a clearly established right under the Eighth Amendment to not be celled with dangerous and violent inmates. The Court will proceed directly to the second prong of the qualified immunity analysis. (Doc. 19, at 4).[3]

---

[3] The Supreme Court has noted that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735.

"A right is 'clearly established' if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 585 (M.D. Pa. 2013). A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Furthermore, the Third Circuit has noted that "[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 n.4 (3d Cir. 2001). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see also al–Kidd*, 563 U.S. at 742 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix v. Luna*, 136 U.S. 305, 308 (2015) (per curiam) (*quoting al–Kidd*, 563 U.S. at 742).

Inmates possess a clearly established right to be protected from known risks to their physical safety. *See Bistrian v. Levy*, 696 .3d 352, 367 (3d Cir. 2012); *citing Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir.2000). Additionally, several federal courts of appeals in other circuits have determined that cell assignment policies that do not attempt to segregate violent prisoners from non-violent prisoners, particularly when combined with other aggravating factors, may be part of an Eighth Amendment violation. *See Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 66

11

(1st Cir. 2002) (holding that the risk of inmate-upon-inmate violence has been held a sufficiently serious harm to implicate inmates' constitutional rights, and that lack of a classification system may be part of an Eight Amendment violation); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1029 (11th Cir. 2001) (finding that plaintiff's claims, including allegation that prison supervisor failed to separate non-violent inmates from violent inmates, presented an objectively substantial risk of serious harm); *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) ("[Plaintiff] only needed to prove that the policymaker knew there was a substantial risk of serious harm to the inmates under his policy or custom of housing all manner of inmates together. That policy created an unsafe jail and the substantial risk that inmates would be injured."); *Marsh v. Arn*, 937 F.2d 1056, 1062 (6th Cir. 1991), *overruled on other grounds by Farmer*, 511 U.S. 825 ("Failure to segregate violent inmates from non-violent inmates has been held to constitute 'deliberate indifference' and thus to violate the [E]ighth [A]mendment where there is a 'pervasive' risk of harm or where the victim belonged to an 'identifiable' group of prisoners for whom risk of assault is a serious problem of substantial dimension."); accord *Barreto v. Cnty. of Suffolk*, 762 F. Supp. 2d 482, 492 (E.D.N.Y. 2010) ("Plaintiff has alleged not just an overall policy of housing violent and non-violent offenders together, but that the County failed to segregate even those violent offenders who it knew had a track record of violently attacking fellow inmates while incarcerated, thereby suggesting that the County consciously disregarded serious risks to inmate safety."); *Freeman v. Snyder*, No. CIV.A. 98-636-GMS, 2000 WL 1728278, at *9 (D. Del. Mar. 29, 2000) (denying defendants' motion for summary judgment upon finding it "troubling to learn that an inmate who was incarcerated for check forgery was placed in a cell with a prisoner who had been convicted of murder").

12

In his amended complaint, Coleman has alleged aggravating factors that helped to create a substantial risk of harm, namely the age and size discrepancies between Coleman and Ausley, as well as Ausley's gang affiliation. (Doc. 28, ¶¶ 1, 36-39). In light of this substantial line of authority, Plaintiff's alleged aggravating factors, and the Third Circuit's instruction that qualified immunity is generally not appropriate at the pleading stage, *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009), it is recommended that Defendants' qualified immunity defense be denied without prejudice to the argument being re-raised in a later motion for summary judgment.

## V.   RECOMMENDATION

Based on the foregoing, the Court recommends that Defendants Wetzel, Fisher, and Biser's motion to dismiss (Doc. 34) be **DENIED**, and this matter be remanded to the undersigned for further proceedings.

**BY THE COURT:**

Dated: December 16, 2016

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARREN DARNELL COLEMAN, | |
| Plaintiff, | CIVIL ACTION NO. 1:15-CV-00847 |
| v. | (CONNER, C.J.)<br>(MEHALCHICK, M.J.) |
| JOHN E. WETZEL, et al., | |
| Defendants. | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 16, 2016**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: December 16, 2016

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**